| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-07522-CAS(FFMx) | Date | March 30, 2020 |
| Title | ESTATE OF CESAR RODRIGUEZ ET AL. v. CITY OF LONG BEACH ET AL. | | |

Present: The Honorable **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:

Not Present  Not Present

**Proceedings:** (IN CHAMBERS) - DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (Dkt. [29], filed on February 14, 2020)

## I.  INTRODUCTION

Plaintiffs representing the estate of decedent Cesar Rodriguez ("plaintiffs" or "the Estate") filed this action following conduct by defendant Officer Martin Ron ("Officer Ron") of the defendant City of Long Beach police department ("the City") that led to Rodriguez's death on August 29, 2017.

Plaintiffs filed a complaint to initiate this action on August 28, 2018.  Dkt. 1 ("Compl.").  The complaint alleges four claims for relief:  (1) a claim pursuant to 42 U.S.C. § 1983 against Officer Ron for violation of Rodriguez's civil rights based on the alleged use of excessive force that caused Rodriguez's death; (2) a claim pursuant to 42 U.S.C. § 1983 against the City for violation of Rodriguez's civil rights based on the City's alleged failure to adequately train the City's officers;  (3) a state law claim for assault and battery against both Officer Ron and the City based on the same conduct; and (4) a state law claim for wrongful death against both Officer Ron and the City, also based on the same conduct. Compl. ¶¶ 28-57.  Defendants filed their answer on January 2, 2019.  See Dkt. 11.

On February 14, 2020, defendants filed the present motion for summary judgment. Dkt. 29 ("Mot.").  Defendants simultaneously filed a separate statement of uncontroverted facts.  Dkt. 30 ("SUF").  On March 9, 2020, plaintiffs filed an opposition, Dkt. 35 ("Opposition"), which included a statement of genuine issues of disputed facts, Dkt. 35-1 ("SGD").  On March 13, 2020, defendants filed their reply, Dkt. 38 ("Reply"), along with a response to defendants' statement of genuine issues of disputed facts, Dkt. 41 ("RSGD").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 2:18-cv-07522-CAS(FFMx) | Date | March 30, 2020 |
|---|---|---|---|
| Title | ESTATE OF CESAR RODRIGUEZ ET AL. v. CITY OF LONG BEACH ET AL. | | |

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   FACTUAL BACKGROUND

The following facts are not materially disputed and are set forth for purpose of background. Unless otherwise noted, the Court references only facts that are uncontroverted and facts as to which evidentiary objections have been overruled.

### A.   LBPD Provides Law Enforcement Services To LACMTA

Pursuant to a Transit Law Enforcement Services' contract ("the Contract"), the Long Beach Police Department ("LBPD") provides the Los Angeles County Metropolitan Transportation Authority ("LACMTA") with law enforcement services in LACMTA's operations. RSGD No. 1. These law enforcement services support LACMTA's day-to-day operations across its train lines and stations within Long Beach, California. Id. One of the services that LBPD provides LACMTA is police officer presence during LACMTA's "fare enforcement operations." Id. Pursuant to the Contract, the LBPD also removes passengers without a valid transit fare from LACMTA's trains and stations, and conducts other "proactive anti-crime operations." Id.

Before participating in the LBPD and LACMTA partnership, police officers must satisfy certain requirements. For example, the Contract requires LBPD officers assigned to the Metro Transportation Section to demonstrate proof of Peace Officer Standards and Training (P.O.S.T.) certification. RSGD No. 3. Officers must also complete a probationary period and obtain at least eighteen months of law enforcement experience before participating in the partnership. Id. Officers cannot participate if they have any duty restrictions. Id. Furthermore, under the Contract, officers must complete a four-hour safety course before working on any of these assignments. RSGD No. 4.

### B.   Rodriguez Is Killed On August 29, 2017

On August 29, 2017, Officer Ron and his partner, Officer Francisco Vasquez ("Officer Vasquez"), were assigned to patrol the Metro Blue Line in the City of Long Beach, pursuant to the Contract. See RSGD No. 15. Prior to the start of their shift patrolling the Metro Blue Line, the officers attended a briefing session with Metro Transit Security Officers, Ivan Aranda-Acevedo and Sarahi Flores-Zacarias, during which the parties discussed "fare enforcement activities to be conducted during the shift." See RSGD No. 16. The parties determined that Officer Ron would be assisting Acevedo with fare

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-07522-CAS(FFMx) | Date | March 30, 2020 |
| Title | ESTATE OF CESAR RODRIGUEZ ET AL. v. CITY OF LONG BEACH ET AL. | | |

enforcement, and Officer Vasquez would be assisting Flores-Zacarias with the same. See RSGD No. 17. Specifically, Flores-Zacarias and Acevedo would scan passenger Transit Access Pass ("TAP") cards using handheld Mobile Phone Validators ("MVP") to ensure that passengers had paid their transit fares on the Metro Blue Line, while Officer Ron and Officer Vasquez provided them with support. See RSGD No. 18.

At approximately 8:20 p.m., Officer Ron and Acevedo boarded a northbound train at Willow station in Long Beach. See RSGD No. 19. Once on the train, Acevedo began using his MVP device to scan passengers' TAP cards, while Officer Ron followed Acevedo from behind. See RSGD No. 20. Rodriguez was a passenger on that train. See RSGD No. 21. Acevedo approached Rodriguez and scanned his TAP card. Id. Acevedo's MVP showed that Rodriguez's TAP card was invalid. See RSGD No. 22. Consequently, Acevedo told Rodriguez that Rodriguez would need to exit the train at the next stop, Wardlow station. Id. Upon arriving at Wardlow station, Acevedo instructed Rodriguez to exit the train along with him and Officer Ron. See RSGD No. 26. Officer Vasquez and Flores-Zacarias also exited the train with other passengers suspected of fare evasion. See RSGD No. 27.

Defendants claim that Acevedo notified Officer Ron that Rodriguez did not have a valid proof of fare payment, and that Rodriguez had evaded fare payment in violation of California Penal Code § 640(c)(1). See RSGD Nos. 23-24. The plaintiffs dispute this and claim that Acevedo never informed Officer Ron that Rodriguez lacked a valid proof of fare payment, and that Officer Ron accordingly had no basis to believe that Rodriguez had violated any law. Id. In either case, the parties agree that Officer Ron then proceeded to interrogate Rodriguez at the Wardlow station and request that Rodriguez produce a form of government-issued identification. See RSGD No. 25. Rodriguez said that he did not have identification. Id.

One of the officers then instructed Rodriguez to take a seat on a bench situated in the middle of the platform at Wardlow station. See RSGD No. 28. Officer Ron then asked Rodriguez for his name, date of birth, and city of residence. See RSGD No. 30. Rodriguez told Officer Ron that his name was "Anthony Rodriguez," that his date of birth was September 17, 1993, and that he resided in East Los Angeles. See RSGD No. 31. Defendants allege that Officer Ron contacted LBPD in order to verify Rodriguez's identity using the information Rodriguez provided him with. See RSGD No. 32. LBPD was unable to match Rodriguez with a California identification number, and Officer Ron drew the conclusion that Rodriguez had provided a false name in violation of California Penal Code

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | | |
|---|---|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | | 'O' | JS-6 |
| Case No. | 2:18-cv-07522-CAS(FFMx) | | Date | March 30, 2020 | |
| Title | ESTATE OF CESAR RODRIGUEZ ET AL. v. CITY OF LONG BEACH ET AL. | | | | |

Section § 148.9. See RSGD Nos. 33-34. Plaintiffs dispute that Officer Ron actually drew (or could have reasonably drawn) this conclusion at the time because Officer Ron did not ask Rodriguez for his California identification number after Rodriguez stated that he did not have his identification card. Id.

At this point, Officer Ron placed Rodriguez under arrest for violating sections 640(c)(1) and 148.9 of the California Penal Code, and instructed Rodriguez to stand up. See RSGD Nos. 33, 37. Plaintiffs claim that Officer Ron's instruction directed Rodriguez to stand in a location which was only three feet and six inches away from the east edge of the Wardlow stations train platform to conduct the search. See RSGD No. 37. Defendants dispute Rodriguez's proximity to the platform edge. Id. Rodriguez followed the instruction to stand and assumed a "standing modified" position: "feet shoulder width apart and hands interlocked behind his head." See RSGD No. 39. Officer Ron used his right hand to grip Rodriguez's interlocked hands, and his left hand to search Rodriguez. See RSGD No. 41. Officer Ron then found and removed a plastic bag containing a white, crystalline substance on Rodriguez's person, which Officer Ron believed to be methamphetamine, in violation of Health and Safety Code Section 11377(a). See RGSD No. 43.

The parties dispute the following sequence of events. Defendants state that Rodriguez, on his own, "bent his knees, lowered his hips, and lunged towards the train tracks" while Officer Ron conducted the search. See RGSD No. 46. Plaintiffs, on the other hand, claim that Rodriguez was "placed off balance" by Officer Ron's "standing modified" technique and fell toward the tracks. Id. Defendants claim that Rodriguez's movements pulled Officer Ron, who was still holding onto Rodriguez's hands, towards the train tracks, on top of Rodriguez, who was also moved closer to the train tracks. See RGSD No. 47. Plaintiffs, however, assert that Rodriguez was pushed off balance by Officer Ron, and that Rodriguez's movements were the result of the officer's search tactics. Id. Defendants assert that Officer Ron wrapped his left arm around Rodriguez and tried to pull Rodriguez back toward the middle of the platform away from the tracks, but that both Officer Ron and Rodriguez fell down as a result of their "momentum." See RGSD No. 49. The plaintiff disputes this and claims that Officer Ron intentionally brought Rodriguez to the ground. Id.

The parties agree that a train was approaching the station while Officer Ron and Rodriguez fell to the ground, but they dispute whether Officer Ron or Rodriguez knew that the train was approaching at the time. RSGD Nos. 55, 56. The parties also agree that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | |
|---|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | 'O' | JS-6 |
| Case No. | 2:18-cv-07522-CAS(FFMx) | Date | March 30, 2020 | |
| Title | ESTATE OF CESAR RODRIGUEZ ET AL. v. CITY OF LONG BEACH ET AL. | | | |

Officer Ron fell on his right side, and Rodriguez landed stomach-down with his legs partially hanging over the edge of the platform. RSGD No. 50. However, the parties dispute whether Officer Ron attempted to pull Rodriguez away from the train's path. RSGD No. 51. When the train reached the station at speed, it pinned Rodriguez's lower torso between the train and the platform. See id. He was transported to Long Beach Memorial Hospital, where he succumbed to his injuries and died later that evening. RSGD No. 53.

## III.  LEGAL STANDARD

Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | CIVIL MINUTES - GENERAL | | 'O' | JS-6 |
|---|---|---|---|---|---|
| Case No. | 2:18-cv-07522-CAS(FFMx) | | Date | March 30, 2020 | |
| Title | ESTATE OF CESAR RODRIGUEZ ET AL. v. CITY OF LONG BEACH ET AL. | | | | |

## IV.  DISCUSSION

Defendants move for summary judgment on all four of the plaintiffs' claims. See Mot. at 9-25. Plaintiffs do not oppose summary judgment on their two federal § 1983 claims, or on their state law claim for assault and battery. See Opp. at iv, 14-25. Although they do oppose summary judgment on their wrongful death claim, id. at 14-25, they request that the Court decline to exercise supplemental jurisdiction over that claim pursuant to 28 U.S.C. § 1367(c)(3) and "remand" the matter to state court, id. at iv.[1] Defendants contend that the Court should reach and rule on the wrongful death claim, notwithstanding the dismissal of the federal claims. See Reply at 4-11.

Because there is no opposition to entering judgment for defendants on plaintiffs' federal claims and state law assault and battery claim, the Court will grant defendants' motion for summary judgment as to those claims. The question is whether the Court should exercise jurisdiction to reach the merits of plaintiffs' remaining state law claim for negligence and wrongful death.

"Federal courts are courts of limited jurisdiction" possessing the power to hear cases and claims for relief only when "authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). In addition to those claims over which federal courts exercise original subject matter jurisdiction, Congress has authorized the federal courts to exercise "supplemental jurisdiction" over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." See 28 U.S.C. § 1367.

Even where that standard is met, a district court may decline to exercise supplemental jurisdiction over a given claim for relief because the district court has dismissed all other claims over which it has original jurisdiction. Id. at § 1367(c)(3). This is true even after the pleadings have closed: "the discretionary question of whether to

---

[1] To be clear, because this action was not removed to federal court, the Court cannot "remand" the matter to any state court from which it might have been removed. Instead, the Court can dismiss the remaining claim without prejudice and permit the plaintiffs to refile in another court that has jurisdiction, if they so choose. Although plaintiffs use the term "remand," this is the procedure they appear to contemplate (see Opp. at iv, referring to refiling in state court "within 30 days"), and which the Court will consider.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | | |
|---|---|---|---|---|---|
| | CIVIL MINUTES - GENERAL | | | 'O' | JS-6 |
| Case No. | 2:18-cv-07522-CAS(FFMx) | | Date | March 30, 2020 | |
| Title | ESTATE OF CESAR RODRIGUEZ ET AL. v. CITY OF LONG BEACH ET AL. | | | | |

exercise supplemental jurisdiction remains open throughout the case" and "[w]hen [the] court dismisses all claims invoking an independent basis of subject matter jurisdiction, 'it must reassess its jurisdiction' over supplemental state-law claims[.]" See Wright & Miller, 13D Fed. Prac. & Proc. Jurid. § 3567.3 (3d ed. 2019) (quoting Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56, (2d Cir. 2004).

The decision to decline or retain jurisdiction over a state law claim after dismissal of federal claims is conferred to the sound discretion of the district court. See Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010) (explaining that the district court should consider factors such as "judicial economy, convenience, fairness, and comity" before deciding to retain or decline jurisdiction). Most courts weighing these factors continue to follow the Supreme Court's original maxim that where "federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Although the Ninth Circuit has been clear that the admonition in Gibbs "has never meant" that pendant state law claims "must be dismissed" after the dismissal of anchoring federal claims, it has acknowledged that "[t]he Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

The Court agrees that declining jurisdiction, and dismissing the remaining state law claim without prejudice, is the sounder approach in this case. Following the plaintiffs' concessions, all that remains of this case is a California state law claim for wrongful death pled against California state law enforcement agents. Comity, convenience, fairness, and judicial economy counsel in favor of allowing these formerly ancillary California state law issues involving California state actors to be decided in a California court. And while the Court appreciates defendants' concern that a new state court action could expose defendants to additional discovery, these are arguments defendants can make in that forum should plaintiffs seek documents or deposition testimony duplicative of what has been produced in this case already.

The Ninth Circuit has affirmed similar decisions to decline jurisdiction. For example, in Reynolds v. County of San Diego, 84 F.3d 1162 (9th Cir. 1996)—another §1983 case brought by the estate of an individual killed during an encounter with law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 2:18-cv-07522-CAS(FFMx) | Date | March 30, 2020 |
| Title | ESTATE OF CESAR RODRIGUEZ ET AL. v. CITY OF LONG BEACH ET AL. | | |

enforcement—the Ninth Circuit held that "after granting summary judgment on the [federal] civil rights claim" to the County of San Diego, the district court "should have dismissed the state law claims" for negligence and wrongful death pursuant to 28 U.S.C. § 1367(c) instead of ruling upon them. Id. at 1171.[2] The panel accordingly remanded to the district court with instructions to dismiss the remaining claim without prejudice. Id.

The Court declines to exercise supplemental jurisdiction over the remaining state law claim in this case. See Sanford, 625 F.3d at 561. Accordingly, the negligence and wrongful death claim will be dismissed, without prejudice.

## V.     CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' unopposed motion for summary judgment on plaintiffs' two federal § 1983 claims, and plaintiffs' state law claim for assault and battery. The motion is **DENIED AS MOOT** as to plaintiffs' remaining state law claim for negligence and wrongful death, which the Court **DISMISSES WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Plaintiffs shall have 30 days plus whatever amount of time remained under the statute of limitations at the time it filed its federal action to refile the dismissed negligence and wrongful death claim in a state court, if they so choose. See Artis v. D.C., 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d)'s "instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock" in addition to providing a 30 day grace period to refile).

IT IS SO ORDERED.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | CMJ |

---

[2] The Acri en banc panel disapproved of the Reynolds court's decision to raise the § 1367(c) issue on appeal *sua sponte*, but did not find its analysis otherwise misguided or contrary to law. Because plaintiffs raise the issue of § 1367(c) dismissal in their opposition, the concern is of no moment here.